UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ISIDRO ABASCAL,

                Plaintiff,

    v.

DENNIS FLECKENSTEIN,
WILLIAM KUMP,
CHESTER KOSMOWSKI,
JAMES T. CONWAY, and
THOMAS G. EAGEN,

                Defendants.

**DECISION AND ORDER**
06-CV-349S

## I. INTRODUCTION

In this action, pro se Plaintiff Isidro Abascal alleges pursuant to 42 U.S.C. § 1983 that Defendants subjected him to cruel and unusual punishment and failed to protect him in violation of the Eighth Amendment.

Plaintiff commenced this action on May 26, 2006, by filing a Complaint in the United States District Court for the Western District of New York.  Because Plaintiff was granted *in forma pauperis* status, his Complaint was screened pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).  Presently before this Court is Defendants' Motion to Dismiss all but one of Plaintiff's causes of action, filed on April 6, 2007.[1]  For the following reasons, Defendants' motion is granted in part and denied in part.

---

[1] In support of their Motion to Dismiss, Defendants filed a Memorandum of Law and a Reply Memorandum of Law (Docket Nos. 16, 22).  In response, Plaintiff filed a Memorandum of Law, an Affidavit in Opposition to the Motion to Dismiss, and a Statement of Disputed Factual Issues of Material Facts and Appendix (Docket Nos. 18, 19, 20, 21).

## II.  BACKGROUND

The following facts, which are alleged in the Complaint, are assumed to be true for purposes of the instant motion.  At all times relevant, Plaintiff was an inmate in the custody of the New York Department of Correctional Services ("DOCS") incarcerated at the Attica Correctional Facility.  (Complaint, Docket No. 1, pp. 1-2).[2]  Plaintiff is now on parole. (Complaint, p. 1).

Plaintiff alleges that while incarcerated, he was deprived of meals, deprived of electricity in his cell, his legal documents were taken from him and read, he was physically assaulted, and he was verbally threatened.  At all times relevant, Defendants Dennis Fleckenstein, William Kump, and Chester Kosmowski, were correctional officers ("CO"') at Attica. (Complaint, pp. 1-2).

Plaintiff alleges that Fleckenstein, Kump, and Kosmowski deprived him of meals.[3] On September 18, 2004, Kump allegedly refused to open Plaintiff's cell to allow him to report for chow (meal time).  (Complaint, p. 4, ¶ 15).  On fourteen additional occasions beginning in December 2004 and ending in March 2005, Fleckenstein also allegedly refused to open Plaintiff's cell so that he could report for chow.  (Complaint, pp. 4-6). Plaintiff further alleges that Kump was involved in two of these thirteen instances and Kosmowski was involved in five of the instances.  (Complaint, pp. 5-6, ¶¶ 28-32, 34, 36).

For example, on February 21, 2005, while Plaintiff was waiting to go to chow,

_____

[2] Plaintiff's Complaint and the three exhibits attached to it are consecutively numbered as a single document.

[3] Plaintiff also alleges other violations involving a number of COs at Attica, none of whom are named as defendants.  The alleged incidents occurred on November 30 and December 24, 2003; January 7 and 13, March 9, April 23 and 27, May 29, June 11 and 28, July 20, August 12 and 27, September 18, 2004; and March 28, 2005.

Kosmowski told him that he was going to be fed in his cell instead.  (Complaint, p. 5, ¶ 22). Plaintiff was then given two milk cartons, one small apple juice container, and a bag with six small bags of sugar.  (Complaint, p. 5, ¶ 22).  When Plaintiff later inquired about the food he received, Fleckenstein told him that the "feed-up personnel" had screwed up. (Complaint, p. 5, ¶ 22).

Finally, Plaintiff alleges that he missed seven of twelve meals in the 4-day period between March 3 and March 6, 2005.  (Complaint, p. 6, ¶ ¶ 30-34, 36-38).

Plaintiff's deprivation of electricity claims involve Fleckenstein and Kosmowksi. They allegedly turned off the power in Plaintiff's cell on February 27, 2005, at approximately 12:30 p.m.  (Complaint, p. 5, ¶ 28). Plaintiff further alleges that on March 5, 2005, Fleckenstein turned off the power in his cell after he saw him using his typewriter. (Complaint, p. 6, ¶ 35).

Plaintiff also alleges that his legal documents were taken from him and read.  On November 13, 2004, Kump and Fleckenstein allegedly stopped Plaintiff in the entrance of the law library to search his legal folder.  (Complaint, p. 4, ¶ 16).  Kump allegedly read Plaintiff's legal papers and notes, and asked Plaintiff if he was going to sue the state for something that happened while he was DOCS' custody.  (Complaint, p. 4, ¶ 16).  Plaintiff responded that he was not required to answer.  (Complaint, p. 4, ¶ 16).  Further, at 12:30 p.m. on January 18, 2005, when Plaintiff returned from chow, he saw his legal documents (civil rights amended complaint) on the CO's desk 240 feet from his cell.  (Complaint, p. 4, ¶ 20).  After he requested the return of his documents, Plaintiff proceeded to his cell, which had been searched.  (Complaint, p. 4, ¶ 20).  Five minutes later, Kump returned the documents to Plaintiff and gave him a search receipt.  (Complaint, p. 4, ¶ 20).

3

Plaintiff's physical assault claims are against Fleckenstein and Kosmowski. Plaintiff alleges that Fleckenstein physically assaulted him, and that Kosmowski witnessed the incident, but did nothing to stop Fleckenstein or help Plaintiff. On February 22, 2005, at approximately 9:50 a.m., Fleckenstein allegedly elbowed Plaintiff in his right rib cage without provocation while on the way to a sick-call.[4] (Complaint, p. 5, ¶ 24). Plaintiff did not resist or threaten Fleckenstein, but told him that he was going to report the assault. (Complaint, p. 5, ¶ 24). At approximately 10:15 a.m., when Plaintiff returned from sick call, he reported the assault to the Hall Captain and told him to report it to the Block Sergeant. (Complaint, p. 5, ¶ 24).

Plaintiff further alleges that on the same day at approximately 10:25 a.m., Kosmowski asked Plaintiff why he bumped his partner in reference to the physical incident with Fleckenstein earlier that day. (Complaint, p. 5, ¶ 26). Plaintiff denied bumping Fleckenstein, but Kosmowski responded that he saw Plaintiff bump him. (Complaint, p. 5, ¶ 26). Plaintiff told Kosmowski that he was part of a conspiracy. (Complaint, p. 5, ¶ 26).

Plaintiff also alleges several instances where Fleckenstein or Kump verbally threatened him. On February 21, 2005, after Plaintiff complained about being fed in his cell, Fleckenstein approached Plaintiff's cell with an intimidating look and told him twice, "You better watch your step!" (Complaint, p. 5, ¶ 22). On November 13, 2004, when Plaintiff's legal folder was searched, Kump also allegedly told Plaintiff, "Get out of here before I slap the shit out of you to give you a reason to sue the state!" (Complaint, p. 4, ¶ 16). Fleckenstein, who was present when Plaintiff reported the physical incident of February 22,

---

[4] Defendants have not moved to dismiss the claim for excessive force regarding this incident against Fleckenstein.

2005, told Plaintiff, "The next time, I'm going to wrap you up in a bag!" (Complaint, p. 5, ¶ 25).  On March 4, 2005, at approximately 11:50 a.m., Fleckenstein allegedly made a fist near Plaintiff's face and said, "We're going to pound you!" and "We're going to stop your bullshit!" (Complaint, p. 6, ¶ 33).

Finally, Plaintiff alleges that Conway and Eagen failed to protect him from a known pattern of abuse, despite being informed of the conditions in writing.  (Complaint, pp. 8-9). At all times relevant, Defendant James Conway was the Superintendent at Attica, and Defendant Thomas Eagen was the Director of the Inmate Grievance Program in the DOCS. (Complaint, pp. 1-2).   On January 7, February 16, and March 17, 2005, Plaintiff appealed Conway's unfavorable decisions regarding three harassment and retaliation grievances that he had filed on December 3, 2004, January 29, 2005, and February 24, 2005.  (Complaint, pp. 4-6, ¶¶ 19, 21, 39).  Eagen denied the appeals on February 9, March 23, and April 20, 2005.  (Complaint, pp. 4-6, ¶¶ 19, 21, 39).

## III. DISCUSSION

Cognizant of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally, and interpret them to raise the strongest arguments that they suggest. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Since Plaintiff is proceeding pro se, this Court has considered his submissions and arguments accordingly.

Plaintiff alleges that Defendants' subjected him to cruel and unusual punishment in violation of the Eighth Amendment.  He further alleges that Defendants Conway and Eagen violated his constitutional rights by failing to protect him. Defendants argue that all causes

of action, except the claim of excessive force against Fleckenstein, should be dismissed for failure to state a claim upon which relief can be granted or for insufficient pleading.  In addition, Defendants argue that Plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment and should therefore be dismissed.  The parties' respective positions are further discussed below.

## A.    Motion to Dismiss Standard

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12 (b)(6).  When determining whether a complaint states a claim, the court must construe the complaint liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).  Although the complaint need not include detailed factual allegations, the plaintiff must show the "grounds of his entitlement to relief."  Bell Atlantic Corp. v. Twombly, ___U.S.___,127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007).  The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id.; Goldstein, 516 F.3d at 56.  But the Second Circuit does not interpret Twombly as "requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007) (emphasis in original).

Federal pleading standards are generally not stringent.  See Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005) (describing federal pleading requirement as "bare bones notice pleading"); Phillip v. Univ. of Rochester, 316 F.3d 291,

293 (2d Cir. 2003) ("The federal rules allow simple pleadings and rely on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." (quotation and citation omitted)).  Rule 8(a) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  However, it is necessary "that the plain statement possess enough heft to show that the pleader is entitled to relief."  Twombly,127 S.Ct. at 1966.

In the context of pro se actions, the United States Supreme Court has rejected the idea that the plausibility standard requires amplification with factual allegations to render the claim plausible.  See Erickson v. Pardus, ___U.S.___, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).  In Erickson, the Supreme Court reversed the "dismissal of a prisoner's Eighth Amendment claim, holding the court of appeals had 'depart[ed] from the liberal pleading standards' of Rule 8(a)."  Boykin v. KeyCorp, 521 F.3d at 214 (2d Cir. 2008) (quoting Erickson, 127 S.Ct. at 2200).  Although the Court did not clarify when the plausibility standard requires factual amplification, it noted that "a *pro se* complaint however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 127 S.Ct. at 2200 (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed2d 251 (1976)).

**B.     42 U.S.C. § 1983**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred

7

elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)).  Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here, Plaintiff's various § 1983 claims are grounded in the Eighth Amendment.

### 1.    Deprivation of Food

Plaintiff alleges that Defendants Fleckenstein, Kump, and Kosmowksi deprived him of food on several occasions.  Defendants argue that Plaintiff's allegations fail to state a claim upon which relief can be granted.  They argue that only three of the alleged instances should be considered, and that these do not rise to the level of a constitutional violation. (Defendants' Memorandum, Docket No. 16, pp. 6-9).

The Prison Litigation Reform Act ("PLRA") requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Defendants argue that Plaintiff failed to exhaust his administrative remedies because twelve of the fifteen instances were mentioned only in the appeals of his grievances, not in the initial grievances.  (Defendants' Memorandum, p. 7).  But the record reflects that in Plaintiff's initial grievances on January 7 and March 17, 2005, he alleged specific instances of food deprivation and that he had "been subjected to the inhumane prison practice of being deprived of his food innumerable times."  (Complaint, p. 27).  This Court therefore finds, at this stage, that Plaintiff has adequately pled that he exhausted his administrative

8

remedies. All fifteen occasions will therefore be considered.

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 297, 11 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991) (quoting U.S. Const. amend. VIII). "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs — e.g., food, clothing, shelter, medical care, and reasonable safety — it transgresses the substantive limits on state action set by the Eighth Amendment . . . ." Helling v. McKinney, 509 U.S. 25, 32, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993) (quoting DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189, 199-200, 109 S.Ct. 998, 1005-1006, 103 L.Ed.2d 249 (1989)).

Plaintiff's Eighth Amendment cruel and unusual punishment claim is evaluated under a two-prong inquiry. Wilson v. Seiter, 501 U.S. 294, 297-298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d. 271 (1991). To meet the objective prong, the alleged violation must be "sufficiently serious" by objective standards. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994) (citing Wilson, 501 U.S. at 298). The violation will be considered sufficiently serious if the penalty is grossly disproportionate or denied the inmate the "minimal civilized measure of life's necessities." See Williams v. Couglin, 875 F.Supp. 1004 (W.D.N.Y. 1995) (quoting Wilson, 501 U.S. at 298). To satisfy the subjective inquiry the plaintiff must show that the officials acted with deliberate indifference. Farmer, 511 U.S.

at 837.

"The Second Circuit has noted that while no court has explicitly held that denial of food is a per se violation of a prisoner's Eighth Amendment rights, under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." Williams, 875 F.Supp. at 1010 (quotation and citation omitted). Withholding of food for two or more days has been considered a sufficiently serious violation to state an Eighth Amendment claim. Williams, 875 F.Supp. at 1013. Further, withholding of food may be considered a sufficiently serious violation when used as a punishment, if it is grossly disproportionate to the offense. See Williams, 875 F.Supp. at 1013; Moss v. Ward, 450 F.Supp. 591, 596 (W.D.N.Y. 1978).

In this Court's view, Plaintiff's allegation that Fleckenstein deprived him of twelve meals between February 22 and March 6, 2005, (at one point seven meals over a four-day period), if proven, is sufficiently serious such that it could constitute the denial of the minimal civilized measure of life's necessities. Moreover, Kosmowski is alleged to have deprived Plaintiff of food five times within one week, which is sufficiently serious to state an Eighth Amendment claim. Under the circumstances, it is also possible that a jury could find that Fleckenstein and Kosmowski acted with deliberate indifference. Accordingly, accepting Plaintiff's allegations as true, this Court finds that he has adequately stated a claim upon which relief can be granted, and Defendants' motion to dismiss the claims against Fleckenstein and Kosmowski is denied.

But as for Plaintiff's food deprivation claims against Kump, this Court finds that Kump's alleged involvement in three incidents of food deprivation between September 18, 2004, and March 3, 2005, is not a sufficiently serious violation to state an Eighth

Amendment claim because even if they occurred, these were isolated, single-meal deprivations.  Cf. Williams, 875 F.Supp. at 1013 (withholding food for two or more days is sufficiently serious).  Accordingly, Defendants' motion to dismiss the claim against Kump will be granted.

### 2.    Deprivation of Power in Cell

Plaintiff alleges that Defendants Fleckenstein and Kosmowksi deprived him of electricity in his cell on two occasions.   He alleges that the electricity was off for approximately two hours during the first incident, and one hour during the second. (Plaintiff's Memorandum, Docket No. 18, p. 13).  Defendants argue that Plaintiff's allegations fail to state a claim upon which relief can be granted.

Deprivation of electricity can form the basis of an Eighth Amendment conditions-of-confinement claim.   Cf. Powell v. Beilien, No. 04-CV-0926, 2005 WL 1000040, at *2 (W.D.N.Y. Apr. 25, 2005).  To establish a violation, an inmate must show "(1) that the deprivation alleged is objectively sufficiently serious such that the plaintiff was denied the minimal civilized measure of life's necessities, and (2) that the defendant official possessed a sufficiently culpable state of mind associated with the unnecessary and wanton infliction of pain."  Trammell v. Keane, 338, F.3d 55, 161 (2d Cir. 2003) (citing Farmer, 511 U.S. at 834 (internal quotation omitted)).  In this court's view, even assuming the truth of Plaintiff's claim that the power in his cell was briefly turned off on two occasions, this de minimus deprivation is not objectively sufficiently serious to state a claim under the Eighth Amendment, particularly here, where Plaintiff has not alleged that he suffered any injury as a result of he brief loss of electricity.

To the extent Plaintiff claims that the power being turned off in his cell resulted in

11

inadequate lighting (as stated in Plaintiff's reply to Defendant's Motion to Dismiss, Plaintiff's Memorandum, p. 13), this too fails to state a claim.  To allege a claim of inadequate lighting "an inmate must allege that the lighting was so inadequate that it cause or aggravated an objectively serious medical condition and that the defendant was deliberately indifferent to the medical condition."  Powell, 2005 WL 1000040, at *2.  No such allegations are made in the Complaint.  Plaintiff therefore fails to state an Eighth Amendment violation based on inadequate lighting.

Accordingly, Plaintiff's Eighth Amendment claims based on deprivation of electricity and inadequate lighting will be dismissed.

### 3.    Taking and Reading Legal Documents

Plaintiff maintains that Defendant Kump violated his constitutional rights by taking his legal documents from his cell and reading them.   In Plaintiff's Memorandum in Opposition to the Defendant's Motion to Dismiss, Plaintiff specifically states that he is not asserting a claim for denial of access to courts.  (Docket No. 18, p. 11).  Defendants assert that Plaintiff has not stated a claim upon which relief can be granted.

"There are numerous cases holding that . . . allegations regarding intentional confiscation or destruction of a prisoner's property without justification or explanation state a § 1983 claim, [a]nd there are also cases protecting a prisoner's right to access to the courts and to privacy in legal correspondence."  Bayron v. Trudeau, 702 F.2d 43 (2d Cir. 1983) (holding that the district court erred in dismissing inmate's claims that he was intentionally deprived of property and that his legal papers were read by an officer).  Plaintiff alleges that his legal property was confiscated, held, and read without justification.  Accordingly, he has adequately stated a claim upon which relief can be granted, and

12

Defendants' motion to dismiss is therefore denied.

### 4.    Verbal Threats

Plaintiff argues that Defendants Fleckenstein and Kump violated his Eighth Amendment rights by verbally threatening him.  "Verbal threats and harassment alone are not actionable under Section 1983."  Murray v. Kirkpatric, 06-CV-598SR, 2007 WL 541986, at *4 (W.D.N.Y. Feb. 13, 2007).  To the extent Plaintiff bases his claim solely on verbal threats, he has failed to state a claim upon which relief can be granted.

Reading the Complaint liberally, Plaintiff may be alleging that when Kump told Plaintiff to "[g]et out of here before I . . . give you a reason to sue the state," he was retaliating against him for researching and drafting a legal complaint.  (Complaint, p. 4, ¶ 16).  To survive a motion to dismiss on a retaliation claim, the prisoner must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  Gill v. Pidlypchack, 389 F.3d 379, 380 (2d Cir. 2004) (citing Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).  For purposes of the second requirement, adverse action is defined as one "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." Gill, 389 F.3d at 380; Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).  "If the action would not deter an individual of ordinary firmness the retaliatory act 'is simply de minimis and therefore outside the ambit of constitutional protection."  Islam v. Goord, No. 05 Civ. 7502, 2006 WL 2819651, at *4 (S.D.N.Y. Sept. 29, 2006) (citing Davis, 320 F.3d at 353).

Plaintiff undisputedly has a constitutionally-protected right of access to courts, which requires prison authorities to assist in the preparation and filing of meaningful legal papers. U.S. Const. amend. VIII; 42 U.S.C. § 1983; Bounds, 430 U.S. at 821, 828.   However, Plaintiff has not alleged that Defendants took adverse action against him.  Kump's alleged verbal threat is indistinguishable from those that have been found insufficient to establish a constitutional violation.  See, e.g., Bartley v. Collins, 95 Civ. 10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action");  Williams v. Muller, No. 98 Civ. 5204, 2001 WL 936297, at *4 (S.D.N.Y. Aug. 17, 2001) (defendant's "alleged spreading of rumors [that] plaintiff's claims . . . were intended to incite the inmates to harm plaintiff . . . do not rise to a retaliation claim").

Here, Plaintiff does not allege that Kump's threats resulted in any further action or injury.  Accordingly, even liberally construing the Complaint to include a retaliation claim, it must be dismissed.  See Dawes, 239 F.3d at 491 (courts must approach retaliation claims "with skepticism and particular care," because 'virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act").

## 5.    Conspiracy

Plaintiff alleges that Kosmowksi participated in a conspiracy with Fleckenstein to violate his Eighth Amendment rights by subjecting him to excessive force.  Defendants argue that Plaintiff has not sufficiently alleged a conspiracy because his claim is unsupported, speculative, and conclusory. (Defendants' Memorandum, p. 15).  According to Defendants, Plaintiff merely describes the actions the defendants took, and claims this

14

is the evidence of the conspiracy.  To allege a conspiracy, a "plaintiff must allege facts which establish an agreement among the defendants," however, "conclusory, vague or general allegations of conspiracy cannot withstand a motion to dismiss." <u>Eleby v. Simmons</u>, No. 02 CV 636, 2004 WL 1574062, at *1 (W.D.N.Y. June 21, 2004); <u>see</u> <u>also</u> <u>Boddie v. Schneider</u>, 105 F.3d 857, 363 (2d Cir. 1997) (dismissing an inmate's conspiracy allegations as too general and conclusory).  In support of his claim, Plaintiff simply describes Kosmowski's actions as evidence of a conspiracy.  In this Court's view, Plaintiff's allegations are too vague and general to sufficiently plead a conspiracy, and therefore must be dismissed.

If the incident gives rise to any claim against Kosmowski, it is for failure to intervene. A law enforcement official has an affirmative duty to intervene on behalf of a citizen whose constitutional rights are being violated in his presence by other officers.  <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 72 (2d Cir. 2001).  The official may be liable if he observes the use of excessive force or has reason to know that it will be used, and has a realistic opportunity to intervene to prevent the harm from occurring.  <u>Curley</u>, 268 F.3d at 72; <u>Anderson v. Branen</u>, 17 F. 3d 552, 557 (2d. Cir. 1994).

Plaintiff asserts that Kosmowski was present at the physical incident between Plaintiff and Fleckenstein, but did not intervene.  Instead, Kosmowski allegedly made comments to Plaintiff after the incident that he saw Plaintiff bump Fleckenstein.  Although Defendants argue that Plaintiff has not sufficiently pleaded this claim, this Court finds that a liberal construction of Plaintiff's Complaint and submissions reveals that Plaintiff has adequately pleaded a failure-to-intervene claim against Kosmowski. Defendants' motion to dismiss this claim will therefore be denied.

15

6.      **Failure to Protect**

Plaintiff alleges that Defendants Conway and Eagen failed to protect him. Defendants argue that Plaintiff has not sufficiently alleged failure to protect in his Complaint.

Among other things, the Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526-527, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)). To state a failure-to-protect claim under § 1983, the plaintiff must establish two conditions: "First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must demonstrate that the defendant prison officials possessed [the] sufficient culpable intent" of deliberate indifference. Hayes v. New York City Dep't of Corrs., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer, 511 U.S. at 837). The test for deliberate indifference is twofold: the official must have knowledge that an inmate faces a substantial risk of harm, or be aware of facts from which he has drawn such an inference, and disregards the risk by failing to take measures to abate the harm. See Farmer, 511 U.S. at 847; Hayes, 84 F.3d at 620; Warren v. Goord, 476 F.Supp.2d 407 (S.D.N.Y. 2007).

Plaintiff argues that Conway and Eagen were deliberately indifferent because they were aware that he faced a substantial risk of harm from his IGC's, and they failed to abate the harm by denying the grievances. In support of this argument, Plaintiff relies on his allegations that Conway denied his grievances, and that Eagen denied his appeals. But the denial of a grievance, without further explanation of how the denial violated a constitutional right, is an insufficient basis upon which to state a claim. See Warren, 476 F. Supp.2d at

413. Further, "liability cannot be imposed on a state official for damages under § 1983 solely by the fact that he is a supervisor because respondeat superior liability does not exist under § 1983." Abbas v. Senkowski, No. 03 Civ. 476, 2005 WL 2179426 at *2 (N.D.N.Y. Sept. 9, 2005) (citing Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999)). In the present case, Plaintiff has not included any allegations concerning how Defendants' denial of his administrative appeals gives rise to a plausible failure to protect claim. As such, Plaintiff has failed to allege a claim for failure to protect against Conway or Eagen; they will therefore be dismissed from this case.

## C.   Qualified Immunity

Plaintiff's claims are asserted against Defendants in their individual and official capacities. The claims against Defendants in their official capacities are barred by the Eleventh Amendment and must be dismissed. See U.S. CONST. amend. XI; Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The Eleventh Amendment renders states immune from suit in federal court and "this immunity extends to state agencies, state branches of government, and other arms of the state." Guarneri v. West, 518 F.Supp.2d 514, 519 (W.D.N.Y. 2007). DOCS, as a state agency, enjoys Eleventh Amendment immunity from suit in federal court. Guarneri, 518 F.Supp.2d at 519. Claims against state officials in their official capacities are considered claims against the state and are therefore barred by the Eleventh Amendment. Guarneri, 518 F.Supp.2d at 519. Accordingly, Defendants' motion to dismiss Plaintiff's claims against Defendants in their official capacities will be granted.

17

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part.  The motion is granted with respect to the claim of food deprivation against Kump; the deprivation of electricity claim against Fleckenstein and Kosmowski; the verbal threat and retaliation claims against Fleckenstein and Kump; the conspiracy claim against Kosmowski; the failure-to-protect claims against Conway and Eagen; and all claims asserted against the Defendants in their official capacities.  The motion is denied with respect to the food deprivation claims against Fleckenstein and Kosmowski; the claim that Kump took and read Plaintiff's legal documents; and the failure-to-intervene claim against Kosmowski.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 15) is GRANTED in part and DENIED in part consistent with this decision.

FURTHER, that the Clerk of the Court is directed to terminate Defendants Conway and Eagen as defendants in this case.

SO ORDERED.

Dated:      July 30, 2008
            Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge