UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

ISIDRO ABASCAL,

                         Plaintiff,

v.                                                   **DECISION AND ORDER**
                                                           06-CV-349S

DENNIS FLECKENSTEIN, WILLIAM KUMP,
CHESTER KOSMOWSKI, JAMES T. CONWAY,
and THOMAS EAGEN,

                         Defendants.

## I. INTRODUCTION

Plaintiff Isidro Abascal, proceeding *pro se* and *in forma pauperis*, commenced this action pursuant to 42 U.S.C. § 1983, alleging that while he was incarcerated at Attica Correctional Facility, Defendants subjected him to cruel and unusual punishment and failed to protect him in violation of the Eighth Amendment. Pending before this Court are the Summary Judgment Motions of Plaintiff and Defendants. For the reasons discussed below, this Court finds the matter fully briefed and oral argument unnecessary, and concludes that Plaintiff's motion should be denied in its entirety, and Defendants' cross-motion should be granted in part and denied in part.

## II. BACKGROUND

At all times relevant to his Complaint, Plaintiff was an inmate in the custody of the New York Department of Correctional Services at Attica Correctional Facility. (Complaint, Docket No. 1, at 1-2). Defendants Dennis Fleckenstein, William Kump, and Chester Kosmowski were correctional officers ("COs") during Plaintiff's period of incarceration. (Complaint at 1-2). Plaintiff alleged in his Complaint that these COs subjected him to cruel

1

and unusual punishment in violation of the Eighth Amendment by depriving him of meals, depriving him of electricity in his cell, confiscating and reading his legal documents, physically assaulting and conspiring to physically assault him, and verbally threatening him. (Complaint at 7-8).  Plaintiff further alleged that Defendants James T. Conway, Attica Correctional Facility Superintendent, and Thomas G. Eagen, Director of DOCS Inmate Grievance Program, failed to protect Plaintiff from the cruel and unusual treatment by the COs. (Complaint at 2, 8).

Defendants initially moved pursuant to Rule 12 (b)(6) to dismiss all causes of action except Plaintiff's claim of excessive force against Defendant Fleckenstein for failure to state a claim. (Docket Nos. 15, 16).  This Court granted that motion in part and denied the motion in part. (Docket No. 26 at 17).  Plaintiff's claims based on deprivation of electricity, verbal threats, and conspiracy were dismissed, although this Court liberally construed Plaintiff's pro se complaint as alleging a failure to intervene claim against Defendant Kosmowski.  (Docket No. 26, at 12, 14-15).  It was further concluded that Plaintiff failed to state a claim of failure to protect, therefore Defendants Conway and Eagen were dismissed from the case. (Docket No. 26).  All claims were dismissed insofar as they were asserted against Defendants in their official, rather than individual, capacities. (Docket No. 26, at 17).

Plaintiff's remaining claims are against Defendants Fleckenstein and Kosmowski for the deprivation of food, against Defendants Fleckenstein and Kump for the confiscation

and reading of legal documents,[1] against Fleckenstein for excessive force, and against Kosmowski for the failure to intervene in the assault by Fleckenstein.  The parties each now move for summary judgment in their favor.[2]

### III. DISCUSSION

Summary judgment is appropriate where the materials in the record, including depositions, documents, affidavits or declarations, and stipulations, show that there are no genuine issues regarding any material fact and that the movant is entitled to judgment as a matter of law.  see FED.R.CIV.P. 56 (a), (c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor v. Electric Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. " Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  When

---

[1] Although the cause of action alleging interference with legal documents is directed only at Kump, Plaintiff's factual allegations indicate that Fleckenstein was allegedly involved in one instance.  Complaint ¶ 20, Docket No. 1 at 7.

[2] In support of his Motion for Summary Judgment (Docket No. 85), Plaintiff submitted his Statement of Undisputed Facts (Docket No. 85-1), the Affidavit of Plaintiff Isidro Abascal (Docket No. 85-2), a supporting Memorandum of Law (Docket No. 85-3), and an Appendix of Exhibits A1 - A5 (Docket No. 85-4).

Defendants submitted in support of their Cross-Motion for Summary Judgment (Docket No. 86) a supporting Memorandum of Law (Docket No. 86-1), Statement of Undisputed Facts (Docket No. 86-2), Declaration of P. Corcoran (Docket No. 87), Declaration of Defendant Dennis Fleckenstein (Docket No. 88), Declaration of George Zimmermann, Esq., with Exhibits A & B (Docket No. 89), and Declaration of Defendant Chester Kosmowski (Docket No. 90).

Plaintiff further submitted a Statement of Disputed Factual Issues (Docket No. 93), an Affidavit in Opposition to Defendant's Cross-Motion (Docket No. 94), an opposing Memorandum of Law (Docket No. 95-2), an opposing Appendix with Exhibits A1-A8 (Docket No. 95-1).  Defendants responded to Plaintiff's motion with an opposing Memorandum of Law (Docket No. 97), to which Plaintiff filed a Reply Memorandum of Law (Docket No. 98).

making that determination, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

Further, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.' " Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)(emphasis in original), quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006).  Nonetheless, "proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment." Castro v. 32BJ Union, 800 F.Supp.2d 586, 591 (S.D.N.Y. 2011)(internal quotation marks omitted).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which provides that persons who, acting under the color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and other laws are subject to civil liability.  This provision does not itself provide a source of substantive rights, but instead provides the mechanism by which a plaintiff may seek vindication of federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  To that end, "[i]n addition to prohibiting punishments that involve the unnecessary and wanton infliction of pain, the Eighth Amendment imposes certain duties on prison officials, who 'must ensure that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of the inmates.' " Williams v. Coughlin, 875 F.Supp. 1004, 1009 (W.D.N.Y.1995), quoting Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)(internal quotation marks omitted).  A

prisoner may establish an Eighth Amendment violation based upon the conditions of his confinement "only where he proves both an objective element-that the prison officials' transgression was 'sufficiently serious'-and a subjective element-that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' *i.e.*, with 'deliberate indifference to inmate health or safety.'" Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002), quoting Farmer, 511 U.S. at 834.

### A.     Deprivation of Food

Plaintiff alleges that he was deprived of meals by Fleckenstein on 13 different occasions between December 10, 2004 and March 6, 2005, with seven of those meals being denied in a four day period.  Complaint ¶¶ 17-18, 22-23, 27-32, 34, 36-38; Affidavit of Plaintiff Isidro Abascal, Docket No. 85-2, ¶¶ 7-8, 11, 15-16, 18-21, 23, 25-27.  Plaintiff alleges that Kosmoswski participated in five of those denials. Complaint ¶¶ 28-29, 32, 34, 36; Pl's Aff. ¶¶ 16, 18, 21, 23, 25.  Defendants deny that Plaintiff was intentionally deprived of any meals, and assert that on the one occasion he was not given the proper amount of food by an inmate porter, Plaintiff was offered a double meal at the next feeding. Declaration of Defendant Dennis Fleckenstein, Docket No. 88, ¶ 9; Declaration of Defendant Chester Kosmowski, Docket No. 90, ¶ 4; Def's Mem. of Law, Docket No. 86-1 at 8.  This stark dispute over whether Plaintiff was in fact deprived of any meals requires denial of Plaintiff's motion for summary judgment on this claim.

Defendants argue that they are nonetheless entitled to summary judgment because Plaintiff has admitted "that the cells were controlled by a lock box, which he could not see from his cell, and he therefore can not say who neglected to open his cell." Def's Mem. of Law at 9.  Defendants correctly argue that in order to recover under § 1983, Plaintiff must

establish the personal involvement of each defendant in the alleged constitutional deprivations. Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003), cert denied 543 U.S. 1093 (2005); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  The record does not support the assertion, however, that Plaintiff admitted he could not identify the correctional officer who failed to open his cell on each of the occasions alleged.  Plaintiff testified at his deposition that he was placed in the next-to-last cell in his company, apparently some distance from where the lock box was located behind a secured gate.  Pl's Dep. at 20-22, 42.  He further testified, and Defendants do not dispute, that just prior to meal time, one of the two correctional officers assigned to the company would walk down the company and take note of which prisoners were requesting to go to the mess hall.  Pl's Dep at 20, 22-24; see Fleckenstein Decl. ¶ 11; Kosmowski Decl. ¶ 6.  Accordingly, even if Plaintiff could not see the officer who operated the lock box, he could identify the officer involved in taking and reporting his allegedly unfulfilled meal request.

Defendants further argue that the deprivation of fourteen meals over four months, even if true, is not sufficiently serious to establish an Eighth Amendment violation. "[U]nder certain circumstances a *substantial* deprivation of food may well be recognized as being of constitutional dimension." Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983)(emphasis added). If the instances of denied meals were in fact dispersed throughout the four month time frame alleged, this issue would be quickly resolved. See Benitez v. Locastro, No. 04-CV-423, 2008 WL 4767439, *7 (N.D.N.Y. Oct. 29, 2008)(allegation of one missed meal a day insufficient to establish Eight Amendment claim); McLeod v. Scully, No. 81 Civ. 3139, 1984 WL 692, *2 (S.D.N.Y. July 30, 1984)(same).  Here, however, Plaintiff alleges that he was deprived of seven meals in a four day period.  Complaint ¶¶ 30-32, 34, 36-38; Pl's Aff.

¶¶ 19-21, 23, 25-27 (March 3-6, 2005); see Williams, 875 F.Supp. at 1008, 1013 (defendant's motion for summary judgment denied because deprivation of five meals in two days, following which the plaintiff passed out, "may state a claim under the Eighth Amendment"). Although Plaintiff received at least one meal a day during this period, "[w]hen a prison guard deprives a prisoner of two of the regularly three meals served each day, the objective prong of the Eighth Amendment may be met if the defendants do not satisfy their burden of showing that the one meal served is nutritionally adequate." Beckford v. Portuondo, 151 F.Supp.2d 204, 213 (N.D.N.Y. 2001), citing Cunningham v. Jones, 567 F.2d 653, 660 (6th Cir. 1977)(deprivation of two meals a day establishes "substantial deprivation of jail food normally served," shifting burden to defendants to establish that one meal was nutritionally adequate). Defendants have offered no evidence as to "whether the one meal actually provided [P]laintiff was sufficient to maintain normal health," therefore there is a material question of fact whether Plaintiff was substantially deprived of food in violation of the Eighth Amendment. Cunningham, 567 F.2d at 660; Williams, 875 F.Supp. at 1008, 1013.

Further, assuming Plaintiff's allegations to be true, as this Court must, the number of denied meals in a short amount of time is sufficient to raise an inference that Defendants Fleckenstein and Kosmowski were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" from the denial of those meals and that they in fact drew such an inference. Farmer, 511 U.S. at 837. Defendants' cross-motion for summary judgment is therefore denied with respect to the claim that Plaintiff was deprived of food in violation of the Eighth Amendment.

**B.     Confiscation of Legal Documents**

Plaintiff alleges that on two separate occasions correctional officers took and read his legal papers without his permission. On the first occasion, Plaintiff was on his way to the law library when Defendants Kump and Fleckenstein stopped him and searched his legal folder. Complaint ¶ 16; Pl's Aff. ¶ 6. On the second occasion approximately two months later, Plaintiff saw his legal documents that had been taken from his cell and placed on the correctional officer's desk. Complaint ¶ 20; Pl's Aff. ¶ 9. His cell had been the subject of a search, and approximately five minutes later his legal documents were returned to him by Defendant Kump. Complaint ¶ 20; Pl's Aff. ¶ 9.

Initially, this is the only claim remaining against Defendant Kump, and Defendants argue that the claim should be dismissed as against him due to Plaintiff's failure to move for substitution of Kump's estate as defendant after Kump's death in April 2007. Where a party dies and a claim against him is not extinguished by his death, a motion for substitution may be made by any party. FED. R. CIV. P. 25 (a)(1). "If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent *must* be dismissed." Id.(emphasis added). Presuming that this § 1983 claim survives Kump's death, see generally Graham v. Henderson, 224 F.R.D. 59, 62 -63 (N.D.N.Y. 2004), Defendants filed a formal written statement of fact of death on February 2, 2009 (Docket No. 32). Plaintiff failed to move for substitution, or even address this issue in his motion papers. See Docket No. 35 at 12 (Plaintiff concedes that Kump is deceased). This claim against Kump must therefore dismissed pursuant to Fed. R. Civ. P. 25 (a)(1).

In any event, dismissal against both Kump and Fleckenstein is also warranted on the merits. Plaintiff expressly denies any claim that the COs' actions constituted a denial

8

of access to the courts, Pl's Reply Mem. of Law, Docket No. 98 at 8. Instead, he grounds his argument in part on attorney-client privilege, asserting that he never consented to the taking and reading of his legal documents or intended to share the same with any third party. Pl's Reply Mem. of Law, at 8-9. Notably, the case on which Plaintiff relies, United States v. DeFonte, dealt with the admissibility of purported privileged communications between a prisoner and her attorney at a trial of a corrections officer, a situation not relevant to the instant § 1983 claim. 441 F.3d 92, 94 (2d Cir. 2006)(prisoner does not "waive an attorney-client privilege with respect to documents retained in her cell simply because there is no reasonable expectation of privacy in those documents for Fourth Amendment purposes"). Here, Plaintiff does not allege that his legal papers contained confidential *communications* to an attorney. See DeFonte, 441 F.3d at 95-96. Further, interference with legal documents, particularly with legal mail containing attorney-client communications, "implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003); see Washington v. James, 782 F.2d 1134, 1138-1139 (2d Cir. 1986)(plaintiff's allegation that correction officer opened his mail without permission reasonably interpreted as allegation of intentional interference with plaintiff's right to access the court); Hiney v. Wilson, 520 F.2d 589, 591 (2d Cir. 1975)(confiscation of legal papers may constitute a denial of access to the courts); see generally Lewis v. Casey, 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)(recognizing that the right of access to the courts is protected by prohibiting prison officials from actively interfering with the preparation or filing of legal documents).

Defendants correctly argue that Plaintiff cannot establish a claim for interference

with access to the courts. "To establish a constitutional violation based on denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the plaintiff." Bellezza v. Holland, 730 F.Supp.2d 311, 314 (S.D.N.Y. 2010)(internal quotation marks omitted). According to Plaintiff, he was deprived of his documents for no more than five minutes on either occasion, and there is no evidence that his legal papers were otherwise altered or damaged. Complaint ¶¶ 16, 20; Pl's Aff. ¶¶ 6, 9. Thus, there is no evidence of actual harm. Davis, 320 F.3d at 352 (two instances of interference with legal mail insufficient to state denial of access claim in absence of actual harm); Gagot v. Rodriguez, No. 08-CV-361, 2011 WL 1201822, *4 (March 23, 2011)(24 hour deprivation of legal documents was de minimus and did not result in actual impairment of a legal claim). For the same reason, Plaintiff was not deprived of his property. Cf. Alexanian v. New York State Urban Dev. Corp., 554 F.2d 15, 17 (2d Cir. 1977)(violation of § 1983 stated when plaintiff's money and possession, confiscated upon his incarceration, were not returned to him upon his release).

Finally, as Defendants argue, a brief interruption in Plaintiff's access to his papers is not unconstitutional where, as here, the brief searches were reasonably related to legitimate penological objectives. See Crawford-El v. Britton, 951 F.2d 1314, 1318 (D.C. Cir. 1991), cert denied 506 U.S. 818 (1992), citing Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Here, Plaintiff acknowledges that certain written materials are considered contraband, such as documents related to gangs, and that there are times when a document must be read to determine whether or not it is contraband. Pl's Dep. at 66-67. Defendants cross-motion for summary judgment on this claim is therefore

granted.

C.     **Excessive Force and Failure to Intervene**

Plaintiff alleges that on February 22, 2005, while Plaintiff was on his way to a sick call, Defendant Fleckenstein "approached him, and hit [P]laintiff without provocation on the right-hand side of his rib cage area with his elbow." Pl's Aff. ¶ 12; Complaint ¶ 24. Plaintiff asserts that he "did not resist or threaten . . . Fleckenstein in any fashion or [break] any prison rules" prior to the assault, and that he suffered a bruise and soreness for several days as a result. Pl's Aff. ¶ 12; Complaint ¶ 24; Pl's Mem. of Law in Opp'n, Docket No. 95-2 at 14; Pl's Dep. at 90-91. Fleckenstein purportedly told Plaintiff shortly thereafter "The next time, I'm going to wrap you up in a bag!" Pl's Aff. ¶ 13; Complaint ¶ 25. Plaintiff further alleges that Defendant Kosmowski subsequently "asked [P]laintiff why he bumped his partner," and that Kosmowski "saw [P]laintiff doing the bumping." Pl's Aff. ¶14; Complaint ¶ 26. Fleckenstein denies this version of events, instead describing the incident as one where Plaintiff attempted to push past him without permission while Fleckenstein was at the gate by the officers' desk. Fleckenstein Decl. ¶¶ 6, 21-22. Kosmowski acknowledges that he asked Plaintiff why he bumped Fleckenstein, but asserts that this was because he observed Plaintiff attempt to push past Fleckenstein while that officer was controlling inmate traffic at the gate. Kosmowski Decl. ¶¶ 11-13.

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components-one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Wright v Goord, 554 F.3d 255, 268 (2d Cir. 2009). The core judicial inquiry to be made is not the extent of the injury, if any, but whether the nature of the force used was nontrivial and applied maliciously and

11

sadistically for the purpose of causing harm. Wilkins v. Gaddy, __ U.S. __, 130 S.Ct. 1175, 1179, 175 L.Ed.2d 995 (2010); see Wright v Goord, 554 F.3d at 268-269.  Nonetheless, not "every malevolent touch by a prison guard gives rise to a federal cause of action," and de minimis uses of physical force do not fall within the scope of the Eighth Amendment prohibition against cruel and unusual punishments. Hudson, 503 U.S. at 9. Where, however, "a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically," summary judgment is improper "even where the plaintiff's evidence of injury [is] slight and the proof of excessive force [is] weak." Wright, 554 F.3d at 269.

Here, Plaintiff's purported bruise is certainly "slight," and his allegation of a single elbow blow to his side is also "weak." Wright, 554 F.3d at 269. Crediting Plaintiff's version of events, however, as this Court must in considering Defendants' motion for summary judgment, Dallas Aerospace, Inc., 352 F.3d at 780, Fleckenstein's brief assault was completely unprovoked and unrelated to any effort to maintain or restore discipline. If construed as a threat, Fleckenstein's alleged subsequent statement that "next time, I'm going to wrap you up in a bag," provides sufficient evidence when combined with the absence of provocation or need to raise a material question of fact whether Fleckenstein acted with malicious intent. See Wilkins, 130 S.Ct. At 1179 (district court's focus on de minimus nature of injuries improper where plaintiff alleged he was punched and kicked without any provocation). In so concluding, this Court expresses no view on the underlying merits of this excessive force claim, but notes only that, if successful, "the relatively modest nature of his alleged injuries will no doubt limit the damages he may recover." Wilkins, 130 S.Ct. at 1180. Both Plaintiff's motion and Defendants' cross-motion for summary judgment

are therefore denied with respect to Plaintiff's claim of excessive force against Fleckenstein.

The same conclusion is not reached with respect to Plaintiff's claim against Defendant Kosmowski for failure to intervene. A law enforcement official has an affirmative duty to intervene on behalf of a citizen whose constitutional rights are being violated in his presence by other officers. Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001). As noted, however, Plaintiff describes the alleged assault as a single, unprovoked blow. Accordingly, Kosmowski did not have a realistic opportunity to intervene. O'Neill v. Krzeminski, 839 F.2d 9, 11 -12 (2d Cir. 1988)(no reasonable opportunity to intervene where three blows struck in rapid succession); see Lewis v. Downey, 581 F.3d 467, 472 (7th Cir. 2009) (no realistic opportunity to prevent fellow officer from using taser), cert. denied 130 S.Ct. 1936 (2010). This claim against Kosmowski is therefore dismissed.

## IV.  CONCLUSION

Inasmuch as there are material differences between Plaintiff's and Defendants' versions of events, Plaintiff's Motion for Summary Judgment is denied in its entirety. Nonetheless, Defendants have established their entitlement to summary judgment with respect to Plaintiff's claim that his legal documents were improperly confiscated and read, as well as his claim that Defendant Kosmowski failed to intervene in the alleged assault. Defendants' Cross-Motion for Summary Judgment is therefore granted with respect to those claims, and denied with respect to Plaintiff's remaining deprivation of food and excessive force claims.

## V.  ORDERS

IT HEREBY IS ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 85) is DENIED;

FURTHER, that Defendants' Cross-Motion for Summary Judgment (Docket No. 86) is GRANTED IN PART and DENIED IN PART;

SO ORDERED.


Dated:   February 25, 2012
         Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Judge
